IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARCUS PETERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-25-411-SLP |
| METRO TECHNOLOGY CENTERS | ) |
| a/k/a SCHOOL DISTRICT NO. 22, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

Before the Court are two related motions to dismiss filed by Metro Technology Centers and its employees. First, Defendant Metro Technology Centers (the School District) filed a Motion to Dismiss and Brief in Support [Doc. No. 10], to which Plaintiff filed a Response, *see* [Doc. No. 14], and Metro Technology Centers replied, *see* [Doc. No. 16].[1]

Second, Defendants Aaron Collins, Zachary Gleason, and Kyla Loggins (the Individual Defendants) filed a Motion to Dismiss with Combined Brief in Support [Doc. No. 11], to which Plaintiff responded, *see* [Doc. No. 13], and the Individual Defendants replied, *see* [Doc. No. 15].

Each of the Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the Motions are GRANTED.

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

I.     Background[2]

This matter arises from Plaintiff Marcus Peters's participation in and subsequent dismissal from Metro Technology Centers' Basic Peace Officer Certification (BPOC) program. In February of 2023, Plaintiff was prescribed hydrocodone after a dental procedure. Am. Compl. [Doc. No. 6] at ¶¶ 15-16. Defendant Kyla Loggins (Loggins), the Director of the BPOC program, was informed of the hydrocodone prescription, and instructed Plaintiff that the medication could not be consumed during certain portions of the program. *Id*. at ¶¶ 17-18.

On April 14, 2023, during the defensive tactics portion of the program, Plaintiff was thrown down to the ground on his shoulder but indicated to his training partner that he was fine as a result of taking pain medications. *Id*. at ¶¶ 19-20. Plaintiff then indicated to the training partner that he possessed a hydrocodone prescription but had not consumed it. *Id*. at ¶¶ 21-22. An instructor overhead the conversation and questioned Plaintiff regarding his hydrocodone prescription. *Id*. at ¶¶ 22-23. The instructor subsequently commanded Plaintiff to cease the defensive tactics training and contacted Defendant Loggins, who arrived at the facility. *Id*. at ¶¶ 24-26. Defendant Loggins questioned Plaintiff about the medications he had consumed, and Plaintiff stated he had taken ibuprofen and Excedrin. *Id*. at ¶ 27. Defendant Loggins and three School District instructors took Plaintiff to a separate room to perform a Modified Romberg Test to determine whether Plaintiff was

---

[2] The factual summary herein is taken from Plaintiff's Amended Complaint [Doc. No. 6] and accepted as true for the purpose of deciding the Motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

impaired. *Id*. at ¶¶ 28-29. The instructor performing the test stated Plaintiff failed the test and was unable to drive. *Id*. at ¶ 30. Plaintiff denied taking any impermissible substance and offered to submit to a drug test. *Id*. at ¶ 31. Defendant Loggins declined Plaintiff's offer and stated Plaintiff was prohibited from taking part in the remainder of the defensive tactics portion of the program. *Id*. Plaintiff was subsequently picked up from the facility by his wife and underwent a drug test at a drug screening facility approximately 90 minutes after being removed from training. *Id*. at ¶¶ 33-34. The drug test was negative for any narcotics. *Id*. at ¶ 35.

On April 17, 2023, Plaintiff returned to the School District campus to speak with Defendant Zac Gleason (Gleason), the Site Director. *Id*. at ¶ 36. Defendant Gleason stated that Plaintiff was "dismissed from the [BPOC] program effective immediately" and that the decision was appealable. *Id*. Plaintiff received a removal from instruction letter signed by the School District's Dean of Instruction, dated April 17, 2023. *Id*. at ¶ 37. The letter stated that Plaintiff violated a School District substance abuse policy "relating to the use, possession, distribution, or sale of illegal drugs or other prohibited substances." *Id*. at ¶ 38. The letter also referenced a violation of a course handbook standard which requires students "who are taking medication(s) as prescribed by a physician shall take them accordingly and notify the Academy Coordinator if the substance could be mind altering in any way." *Id*. at ¶¶ 39. Plaintiff believes that the two School District policies are inapplicable to his factual circumstances. *Id*.

Through his attorney, Plaintiff submitted a notice of appeal on April 21, 2023 and a hearing was held on May 3, 2023 before the School District hearing committee where

3

witnesses testified and evidence was submitted. *Id*. at ¶¶ 40-41. Plaintiff believes that the hearing committee disregarded School District policy, refused to objectively examine evidence presented at the hearing, and that the findings of the committee were not supported by the evidence. *Id*. at ¶¶ 46-48. Specifically, Plaintiff believes that the committee disregarded evidence of the intoxication test being "inaccurate and incomplete" and the results of the negative drug test taken approximately two hours after the intoxication test. *Id*. at ¶ 48. On May 11, 2023, Plaintiff received a letter from the School District providing the findings of facts and conclusions of the hearing committee and stating that the district hearing committee affirmed the decision to dismiss him from the BPOC program. *Id*. at ¶ 42. Plaintiff was also informed that he had the right to appeal the decision to the School District Superintendent, Defendant Aaron Collins (Collins). *Id*. On May 23, 2023, Plaintiff submitted his appeal to Defendant Collins, who affirmed the dismissal on June 6, 2023. *Id*. at ¶¶ 49-50.

Plaintiff filed suit against the School District and the Individual Defendants, asserting: (1) a violation of Plaintiff's due process rights pursuant to 42 U.S.C. § 1983 against the School District and the Individual Defendants; (2) violations of the Americans with Disabilities Act and § 504 of the Rehabilitation Act against the School District; and (3) state law claims of breach of contract, negligence, defamation, and intentional infliction of emotional distress against the School District and the Individual Defendants.

## II.    Governing Standard

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint

4

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, requires a litigant to plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When analyzing a complaint under this standard, the Court first identifies "the allegations in the complaint that are not entitled to the assumption of truth,"—i.e., legal conclusions and bare assertions.  *Id.* at 679–81.  It then evaluates the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681. Accordingly, "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).  Although "Plaintiff is not required to set forth a prima facie case for each element, she is required to set forth plausible claims."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).  "While '[s]pecific facts are not necessary,' some facts are."  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Pleadings that do not allow for at least a "reasonable inference" of the legally relevant facts are insufficient.  *Iqbal*, 556 U.S. at 678.

Further, regarding § 1983 claims, there is a "need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210,

5

1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom").

### III. Discussion

#### A. § 1983 Claims

Both the School District and the Individual Defendants move for dismissal of the § 1983 claim under Rule 12(b)(6). The Individual Defendants also argue for qualified immunity and additionally assert dismissal is proper because (1) Plaintiff has failed to demonstrate a violation of his due process rights, and (2) even if Plaintiff sufficiently alleged a violation of a due process right, such constitutional right was not clearly established.

The qualified immunity defense provides the governing framework for the Court's analysis of Plaintiff's claims. *See Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022) ("[w]hen a § 1983 defendant raises qualified immunity . . . the burden shifts to the plaintiff to establish both prongs of the defense."); *see also Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) ("[w]here, as here, defendants moved for dismissal of § 1983 claims under Rule 12(b)(6) based on qualified immunity, there is a presumption that the defendant is immune from suit." (internal quotation marks and citation omitted)).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (quoting *Thomas*

*v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* (brackets and internal quotation marks omitted).

In resolving a motion to dismiss based on qualified immunity, courts evaluate (1) "whether the facts that a plaintiff has alleged make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Fisher Sand & Gravel, Co. v. Giron*, 465 F. App'x 774, 779 (10th Cir. 2012); *see also Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013). "The burden is on the plaintiff to prove both parts of this test." *Giron*, 465 F. App'x. at 779. "Courts have discretion to decide the order in which they address these two prongs." *Roberts v. Winder*, 16 F.4th 1367, 1374 (10th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Here, the Court will start with the first prong because of the overlap between the parties' Rule 12(b)(6) arguments and the requirement for Plaintiff to show the Individual Defendants violated a statutory or constitutional right.

> i.  *Substantive Due Process Claims Against the Individual Defendants*

Regarding the Individual Defendants, Plaintiff first alleges that his due process rights, protected by the Fourteenth Amendment, were violated. Due process protections can be procedural or substantive.[3] "[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision." *Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991). Plaintiff first raises substantive due process violations due to the actions of the Individual Defendants in the disciplinary process and his subsequent dismissal from the BPOC program. Because Plaintiff's substantive due process claim relates to alleged actions of School District employees and thus challenges executive action, the Court will analyze the claim under the "shocks the conscience" test. *See, e.g.*, *Doe v. Woodward*, 912 F.3d 1278, 1300 (10th Cir. 2019); *Halley v. Huckaby*, 902 F.3d 1136, 1154 (10th Cir. 2018).

For plaintiff to prevail on his substantive due process claim, the alleged executive action must "shock the conscience of federal judges." *Uhlrig v. Harder*, 64 F.3d 657 (10th Cir. 1995) (citations omitted). Negligence, unfair process, and even reckless conduct at times are not executive action which shocks the conscience. *See Woodward*, 912 F.3d at

---

[3] Plaintiff's Amended Complaint fails to clarify whether Plaintiff is alleging violations of his substantive due process rights or procedural due process rights. Nevertheless, the Court has found that Plaintiff has failed to adequately plead under either form, and will address each in turn.

8

1300 ("The behavior complained of must be egregious or outrageous.") (citations omitted); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 530 (10th Cir. 1998). "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Woodward*, 912 F.3d at 1300 (quoting *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013). Plaintiff generally cites to the Tenth Circuit's decision in *Tonkovich* for the shocks the conscience standard. *See* Resp. [Doc. No. 13] at 6. Plaintiff cites to no authority to establish that the alleged conduct of the Individual Defendants meets such standard. Rather, the Court finds the *Tonkovich* decision supports dismissal of Plaintiff's due process claim.

In *Tonkovich*, a law professor brought a § 1983 action against University of Kansas faculty and officials after being terminated as a result of sexual misconduct allegations. *See Tonkovich*, 159 F.3d at 510-15. Among other claims, Professor Tonkovich brought substantive due process claims against the Kansas Board of Regents and members of the law school hearing committee for making erroneous findings and that their dismissal decision lacked a rational basis. *Id*. at 530. The Tenth Circuit noted "the Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions." Id. (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129, 112 S. Ct. 1061, L. Ed. 2d 261 (1992)). The Tenth Circuit stated that even if the decisions were incorrect, such actions did not constitute a substantive due process violation. *Id*. Here, Plaintiff alleges that the Defendants violated his substantive due process rights by not objectively viewing and ignoring evidence presented by Plaintiff. *See* [Doc. No. 6] at ¶¶ 47-48. Similar to Professor

Tonkovich, Plaintiff takes issue with the findings of the School District employees and claims their decision to dismiss Plaintiff from the program was erroneous.  The Court does not find that the actions of the Individual Defendants constitute egregious or outrageous conduct as to shock the conscience.  Accordingly, Plaintiff has failed to allege viable substantive due process claims against the Individual Defendants, and such claims are DISMISSED WITH PREJUDICE.[4]

        ii.       *Procedural Due Process Claim Against Individual Defendants*

Plaintiff also alleges the Individual Defendants violated his procedural due process rights in his dismissal from the BPOC program.  Plaintiff's allegations, especially as to his § 1983 claim, largely assert that "Defendants" collectively deprived him of his due process rights.  [Doc. No. 6 at ¶¶ 51-53].  "Because [§ 1983 claims] are vehicles for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls*, 718 F.3d at 1225.  For a viable § 1983 claim, a plaintiff must identify a specific legal right which was violated as a result of the *specific* actions of a *particular* defendant.  *See id*.; *Tonkovich*, 159 F.3d at 532; *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011).  The conclusory allegation that "Defendants arbitrarily dismissed Plaintiff from the BPOC program without affording him meaningful notice, an impartial hearing, or the opportunity to present exculpatory evidence" is insufficient.  [Doc. No. 6] at ¶ 52.  Plaintiff has not alleged with

---

[4] Dismissal with prejudice is appropriate where "granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)).

particularity a defendant who is responsible for such a deprivation and what actions by a particular defendant resulted in the deprivation. While Plaintiff alleged some actions of the Individual Defendants in other parts of the Amended Complaint, Plaintiff did not sufficiently demonstrate how or which such actions constituted an alleged constitutional violation.

For the reasons above, the Court has found Plaintiff insufficiently alleged violations of his procedural due process rights by any of the Individual Defendants. Because of that failure, the Individual Defendants are entitled to qualified immunity at this time. The Court declines to reach a finding as to whether any constitutional right was clearly established at the time of the violation.[5] *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Accordingly, Plaintiff's § 1983 procedural due process claims against the Individual Defendants are DISMISSED WITHOUT PREJUDICE.

      iii.      *Municipal Liability under 42 U.S.C. § 1983*

Plaintiff also brings a § 1983 claim against The School District under a municipal liability theory.[6] To hold the institution liable, Plaintiff must establish "(1) that a [School

---

[5] It is uncertain how each of the Individual Defendants deprived Plaintiff of his procedural due process rights. Because violations were not pled with particularity against each of the Individual Defendants, the Court is unable to engage in any meaningful analysis of the second prong of the qualified immunity test.

[6] It is not clear from the Amended Complaint whether Plaintiff elected to sue the Individual Defendants in their individual and/or official capacities. When a plaintiff alleges § 1983 claims against a government entity, claims against employees of the entity in their official capacities are duplicative. *See, e.g.*, *Stump v. Gates*, 777 F. Supp. 808, 816 n. 3 (D. Colo. 1991 (citations

District] employee committed a constitutional violation, and (2) that a [School District] policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma Cnty. Bd. Of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978)). "In order to establish municipal, or in this case School District, liability . . . a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." *See Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250 (10th Cir. 1999) (citing *Randle v. City of Aurora*, 69 F.3d 441, 446-50 (10th Cir. 1995).[7] A plaintiff must not only demonstrate that there was a policy in place, but that the alleged actions against a plaintiff by an employee were pursuant to such a policy.

As discussed above, Plaintiff has failed to sufficiently allege that a School District employee committed a constitutional violation. *See supra*. For that reason alone, Plaintiff's municipal liability claim against the School District would fail. Even if Plaintiff

---

omitted), *aff'd on other grounds*, 986 F.2d 1429 (10th Cir. 1993); *Castro Romero v. Becken*, 256 F.3d 349 (5th Cir. 2001). Plaintiff named both the School District and employees of the School District (the Individual Defendants) as Defendants. Accordingly, to the extent that the Individual Defendants were sued in their official capacities, such claims are DISMISSED WITH PREJUDICE.

[7] Plaintiff asserts that he is entitled to a more lenient pleading standard in the context of an employment discrimination case, citing to *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The Court rejects such a proposition as Plaintiff still must comply with the plausibility standard for complaints set forth in *Twombly* and *Iqbal*. *See EEOC v. Roark-Whitten Hospitality 2, LP*, 28 F.4th 136, 148-150 (10th Cir. 2022) ("Rule 8 . . . marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") (quoting *Iqbal*, 556 U.S. at 678-79).

established the first element of such a claim, Plaintiff did not allege that a School District policy was the driving force of a constitutional violation.

In the Amended Complaint, Plaintiff notes that the April 17, 2023 removal from instruction letter referenced two separate policies: (1) a "policy relating to the use, possession, distribution, or sale of illegal drugs or other prohibited substances"; and, (2) a BPOC course handbook standard which requires the student to inform an "Academy Coordinator" if the student is taking prescribed medications. Am. Compl. [Doc. No. 6] at ¶¶ 38-39.  Plaintiff does not allege how these particular policies resulted in the deprivation of his due process rights.  Such policies relate to narcotics and do not address due process rights in the education context.  The mere reference of the policies in a letter from the School District does not demonstrate such policies were used to deny Plaintiff of due process rights.  Furthermore, Plaintiff has alleged no other policy or custom of the School District that is causally connected to his alleged constitutional claims under § 1983. Accordingly, Plaintiff's § 1983 claim against Defendant Metro Technology Centers is DISMISSED WITHOUT PREJUDICE.

### B. Claims under Americans with Disabilities Act and Rehabilitation Act

Plaintiff has also asserted violations of Title II of the ADA and § 504 of the Rehabilitation Act against the School District.  The Court will address the claims together given the substantial overlap in standards.  *See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) ("Because these provisions involve the same substantive standards, we analyze them together."); *Urban ex rel. Urban*

*v. Jefferson Cnty. Sch. Dist. R–1,* 89 F.3d 720, 728 (10th Cir.1996) ("[W]e analyze [plaintiff's] ADA claim by reference to [S]ection 504's standards . . .").

"Title II of the ADA states, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (quoting 42 U.S.C. § 12132).  A plaintiff must plausibly allege: "(1) that he or she is a qualified individual with a disability; (2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Id.* (quoting *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)).

Section 504 of the Rehabilitation Act states: 'No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008) (quoting 29 U.S.C. § 794(a)).  To state a claim under § 504, a plaintiff must plausibly allege "(1) plaintiff is handicapped under the Act; (2) [s]he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Id.*  To prevail on their § 504 claim for compensatory damages, Plaintiff must prove intentional discrimination; however, intentional discrimination does not require proof of "personal

14

animosity or ill will." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). Instead, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Id.*; *see also A. J. T. by & through A. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. ---, 145 S. Ct. 1647, 1649 (2025).

Plaintiff failed to allege a qualifying disability and/or handicap under either of the acts. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(g)(1); 34 C.F.R. § 104.3(j)(1) (defining a handicapped person as, in part, "any person who [ ] has a physical or mental impairment which substantially limits one or more major life activities."). The statute goes on to provide the definition of physical and mental impairments:

> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
>
> (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

42 U.S.C. § 12102(h)(1). While not abundantly clear from the Amended Complaint, Plaintiff argues that his narcotic pain medicine prescription after a dental procedure is an impairment that is covered under the ADA and Rehabilitation Act. *See* [Doc. No. 6] at ¶ 55. Plaintiff cites to no law supporting such a proposition. Plaintiff was prescribed a

medication to potentially alleviate any temporary symptoms of pain from a procedure. The Court finds Plaintiff's narcotic pain medicine prescription after a dental procedure is not an impairment that falls under either of the acts. As such, Defendant Metro Technology Centers is entitled to dismissal of Plaintiff's ADA and Rehabilitation Act claims and such claims are DISMISSED WITH PREJUDICE.

### C. State Law Claims

Plaintiff's remaining claims are brought under Oklahoma state law. A district court has discretion to adjudicate the merits of the state-law claims when "the values of judicial economy, convenience, fairness, and comity" indicate that retaining jurisdiction over the state-law claims would be appropriate. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349−50 (1988); *see also* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over state law claims, where, as here, "the district court has dismissed all claims over which it has original jurisdiction."); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (emphasizing that district courts have significant discretion to decline supplemental jurisdiction); *VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1150 (10th Cir. 2017). But "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7.

After considering the relevant factors, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims. *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1314 (10th Cir. 2021) ("When all federal claims have been dismissed, the court may,

and usually should, decline to exercise jurisdiction over any remaining state claims." (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011)); *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial."); *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (Resolution of Plaintiff's state law claims is "best left for a state court's determination."). Accordingly, Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

## IV. Conclusion

IT IS THEREFORE ORDERED as follows:

1. Defendant Metro Technology Centers' Motion to Dismiss and Brief in support [Doc. No. 10] is GRANTED as set forth herein. Plaintiff's § 1983 claim against the School District, Count I, is DISMISSED WITHOUT PREJUDICE. Plaintiff's claims against the School District arising under the ADA, Count II, and the Rehabilitation Act, Count III, are DISMISSED WITH PREJUDICE.

2. IT IS FURTHER ORDERED that Defendants Aaron Collins, Zachary Gleason, and Kyla Loggins's Motion to Dismiss with Combined Brief in Support [Doc. No. 11] is GRANTED as set forth herein. To the extent Plaintiff pled § 1983 claims against the Individual Defendants based on a substantive due process violation, such claims are DISMISSED WITH PREJUDICE. To the extent Plaintiff's § 1983 claims against the Individual Defendants are based on a procedural due process violation, such claims are DISMISSED WITHOUT PREJUDICE.

3.      The Court DECLINES to exercise jurisdiction over the remaining state claims.  Accordingly, Counts IV, V, VI, and VIII are DISMISSED WITHOUT PREJUDICE.

A separate judgment of dismissal shall be entered contemporaneously with this Order.

IT IS SO ORDERED this 12th day of January, 2026.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE